1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COASTKEEPER, a California non-profit corporation, COASTAL ENVIRONMENTAL RIGHTS FOUNDATION, a California non-profit corporation,<br><br>        Plaintiffs,<br>   vs.<br><br>FREE BUILDERS SUPPLY, INC., a California corporation,<br><br>        Defendant. | **Civil Case No.** 3:21-cv-01350-CAB-MDD<br><br>**CONSENT DECREE**<br><br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*.)** |

# CONSENT DECREE

The following Consent Decree (or "Agreement") is entered into by and between San Diego Coastkeeper ("Coastkeeper") and Coastal Environmental Rights Foundation ("CERF") (collectively, "Plaintiffs") and Free Builders Supply Inc., a California corporation ("FBS" or "Defendant"). The entities entering into this Consent Decree are each an individual "Party" and collectively the "Parties.";

**WHEREAS**, Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in San Diego, California;

**WHEREAS**, Coastkeeper is dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of San Diego County from all sources of pollution and degradation;

**WHEREAS**, CERF is a non-profit organization founded by surfers in North San Diego County and active throughout California's coastal communities;

**WHEREAS**, CERF contends it was established to aggressively advocate, including through litigation, for the protection and enhancement of coastal natural resources and the quality of life for coastal residents, and contends that one of CERF's primary areas of advocacy is water quality protection and enhancement;

**WHEREAS**, FBS is owner and operator of a construction materials supply company that also offers metal cutting and reshaping services at its facility located at 1530 Linda Vista Drive, San Marcos California 92078 ("Facility");

**WHEREAS,** FBS has lease agreements with multiple tenants operating independently of FBS on various leaseholds throughout the Facility;

**WHEREAS**, Plaintiffs contend their members live and/or recreate in and around waters which Plaintiffs' members allege receive discharges from the Facility, including specifically San Marcos Creek, Lake San Marcos, Batiquitos Lagoon, and eventually the Pacific Ocean;

**WHEREAS**, the discharges from the Facility are regulated by the National Pollutant

Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, and as amended by Order No. 2014-0057-DWQ, as amended in 2015 and 2018 ("Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS**, on May 21, 2020, Plaintiffs sent FBS, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the San Diego Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("First Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Permit at the Facility;

**WHEREAS**, on July 27, 2021, Plaintiffs filed a complaint against FBS in the United States District Court, Southern District of California (Case No. 3:21-cv-1350-CAB-MDD), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Permit at the Facility ("Complaint");

**WHEREAS**, Plaintiffs allege FBS to be in violation of the substantive and procedural requirements of the Permit, and the Clean Water Act with respect to the Facility;

**WHEREAS**, FBS denies all allegations in the Notice Letter and Complaint relating to the Facility;

**WHEREAS**, the Parties have agreed that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by FBS pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1    1.    The Court has jurisdiction over the subject matter of this action pursuant to

2    Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

3    2.    Venue is appropriate in the Southern District of California pursuant to Section

4    505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located

5    within this District;

6    3.    The Complaint states claims upon which relief may be granted pursuant to

7    Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

8    4.    Plaintiffs have standing to bring this action;

9    5.    The Court shall retain jurisdiction over this matter for purposes of enforcing

10    the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as

11    is necessary for the Court to resolve any motion to enforce this Consent Decree.

12    **I.    OBJECTIVES**

13    6.    It is the express purpose of the Settling Parties entering into this Consent

14    Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et*

15    *seq.*, and to resolve the allegations by Plaintiffs in their Complaint. In light of these

16    objectives and as set forth fully below, FBS agrees to comply with the provisions of this

17    Consent Decree and to comply with the requirements of the Permit and all applicable

18    provisions of the Clean Water Act. Specifically, FBS agrees to comply with Receiving

19    Water Limitation VI.A. of the Permit requiring FBS "ensure that industrial storm water

20    discharges and authorized Non-Storm Water Discharges ("NSWDs") do not cause or

21    contribute to the exceedance of any applicable water quality standards in any affected

22    receiving water," and Effluent Limitation V.A. of the Permit which requires that FBS "shall

23    implement Best Management Practices ("BMPs") that comply with the BAT/BCT

24    requirements of the Permit to reduce or prevent discharges of pollutants in Defendant's

25    storm water discharge in a manner that reflects best industry practice considering

26    technological availability and economic practicability and achievability." FBS shall

27    develop and implement BMPs necessary to achieve compliance with BAT/BCT standards

28    and with the applicable water quality standards as those terms are defined by the Permit.

## II.    AGENCY REVIEW AND TERM OF CONSENT DECREE

7.    Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to FBS if requested. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

8.    The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree.

9.    This Consent Decree shall terminate three (3) years after the Effective Date unless Early Termination is triggered pursuant to paragraph 10 of this Agreement (the earlier of which shall be the "Termination Date" as used in this Consent Decree).

10.    This Consent Decree will terminate early ("Early Termination") in the following circumstances:

10.1    If FBS ceases its operations at the Facility, is no longer subject to the Permit, or files a Notice of Termination (NOT) via the State Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") pursuant to the Permit section II.C.1, and the NOT is accepted by the State or Regional Board; or

10.2    If FBS files a Non-Exposure Certification (NEC) via the State Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") pursuant to the Permit section II.B.1, and the NEC is accepted by the State or Regional Board

10.3    Otherwise by mutual agreement of the Parties, after notice to the

1    Department of Justice.

2        11.    Plaintiffs may conduct an inspection of the Facility up to forty-five (45) days

3    prior to the Termination Date. The inspection shall be conducted according to the rules

4    applicable to Annual Site Inspections described below.

5    **III.**    **COMMITMENTS OF THE PARTIES**

6    **A.**    **Storm Water Pollution Control Best Management Practices.**

7        12.    FBS shall develop and ensure the ongoing maintenance and implementation

8    of (as applicable) appropriate Best Management Practices ("BMPs") necessary to comply

9    with the Permit, including but not limited to those that achieve the Best Available

10    Technology Economically Achievable ("BAT") and the Best Conventional Treatment

11    Technology ("BCT") and to comply with the Permit's Receiving Water Limitations.

12        13.    FBS shall prepare a Storm Water Pollution Prevention Plan ("SWPPP")

13    including a Site Plan identifying the location of implemented BMPs at the Facility. A Copy

14    of the Site Plan is attached hereto as **Exhibit A**. Additional BMPs that will or could be

15    implemented as part of compliance with this Agreement as well as a tentative schedule for

16    completion are attached hereto as **Exhibit B**.

17        14.    FBS shall not be responsible for the licensing, registration, compliance and/or

18    other storm water or any other regulatory obligations of the Tenants at the Facility required

19    to comply with the Permit. A Site Map identifying the leased portions of the Facility and a

20    list of current lessee's and their IGP coverage responsibilities is attached hereto as **Exhibit**

21    **C**.

22    **B.**    **Discharge Locations and Storm Water Sampling.**

23        15.    <u>Discharge Locations</u>. The current storm water sample locations ("Discharge

24    Locations") for the Facility are identified in Exhibit A. Should the Discharge Locations

25    change from what is presently depicted in Exhibit A, FBS will provide Plaintiffs with an

26    updated exhibit.

27        16.    <u>Sampling</u>. The following storm water monitoring procedures shall be

28    implemented at the Facility:

---

Consent Decree                        Civil Case No. 3:21-cv-01350-CAB-MDD

15.1 <u>Frequency</u>. During the life of this Agreement, FBS shall collect samples from all Discharge Locations at the Facility from a minimum of four (4) "qualified storm events" ("QSEs"), as defined by the Permit, that occur in a "Reporting Year," as defined by the Permit, such that FBS collects two (2) samples during the first half of the Reporting Year and two (2) samples during the second half of the Reporting Year, if any QSE's occur during said periods. If, prior to March 1, FBS has collected samples from two (2) or fewer QSEs during that Reporting Year, FBS shall collect samples during as many QSEs as necessary until a minimum of four (4) storm events have been sampled for the Reporting Year, if feasible. No two (2) samples may be from the same QSE. FBS may reduce sampling frequencies to one (1) sample during the first half of the Reporting Year and one (1) sample during the second half of the Reporting Year if there are no exceedances of the values in Table 1 for four (4) consecutive sampling events in accordance with all requirements in Section XI.C.7 of the Permit.

15.2 <u>Contained or Stored Storm Water</u>. FBS shall sample stored or contained storm water discharges from Discharge Locations at the Facility, if any, pursuant to Section XI.B.4 of the Permit.

15.3 <u>Parameters</u>. FBS shall analyze each storm water sample collected from a Discharge Location, pursuant to paragraph 15.1 or 15.2, for the parameters set forth in the below Table 1 Numeric Levels.

15.4 <u>Laboratory</u>. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Agreement.

15.5 <u>Detection Levels</u>. FBS shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below Table 1 Numeric Levels.

15.6 <u>Hold Time</u>. All samples collected from the Facility shall be delivered to the laboratory as necessary, using reasonable best efforts, to ensure that sample "hold time" is not exceeded for each contaminant sampled.

15.7 <u>Results</u>. FBS shall request that sample analysis results be reported to

them as soon as possible without incurring "rush" charges.

15.8    Reporting. FBS shall provide Plaintiffs with the complete laboratory results, including a copy of the Quality Assurance/Quality Control and the laboratory report for all samples described and taken in accordance with the samples identified in paragraphs 15.1 and 15.2 collected at the Facility, within ten (10) business days of receiving the results.

**C.    Reduction of Pollutants in Discharges.**

16.    Contaminant Reduction. Unless otherwise provided by this Agreement, FBS shall develop and implement BMPs to reduce pollutants in storm water discharges from the Facility to levels at or below those in Table 1 ("Numeric Levels").[1]

**Table 1**

| Pollutant | Numeric Level |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Total Recoverable Zinc* | 0.12 mg/L |
| Oil and Grease | 15 mg/L |
| Total Recoverable Aluminum | 0.750 mg/L |
| Total Recoverable Iron | 0.3 mg/L |
| N + N | 0.68 mg/L |
| pH | 6.5-8.5 s.u. |

*In the case of zinc , the values may be adjusted based on hardness pursuant to the California Toxics Rule and Permit. The more conservative value of the NALs and the hardness-adjusted California Toxics Rule values shall apply for these constituents.

17.    Action Plan for Table 1 Exceedances. If Defendant's monitoring reveals an exceedance of the Numeric Limits specified in Table 1 at any Discharge Location between July 1 and June 30 of any reporting year and there is not already an Action Plan[2] currently being prepared or in the process of being implemented by FBS to address or that will

---

[1] The Numeric Levels for metals marked with an asterisk are hardness dependent.

[2] The Action Plan discussed in this Consent Decree is separate and distinct from any "Action Plan" discussed in the Permit. However, nothing in this Agreement prevents FBS from creating a single plan to comply with the Permit and this Agreement, or from including the same BMPs and other measures in an Action Plan under the Permit and this Agreement.

address that pollutant ("Action Plan Triggering Event"), FBS shall prepare an Action Plan for the Facility intended to reduce the Numeric Level of that pollutant.[3] When required, a proposed Action Plan must be submitted to Plaintiffs within 45 (forty-five) days after FBS receives the laboratory results reflecting an Action Plan Triggering Event, unless Defendant requests and Plaintiffs agree to an extension, which agreement shall not be unreasonably withheld.

17.1 <u>Action Plan Requirements</u>. The Action Plan shall include at a minimum: (1) the identification of the pollutant(s) causing the Action Plan Triggering Event; (2) an assessment of the potential source of each pollutant discharged that caused the Action Plan Triggering Event; (3) the identification of additional BMPs, if any, that will be designed and implemented for the location(s) of the exceedance discharge in an effort to prevent future exceedances of parameters that triggered the Action Plan (including the possibility of a treatment control BMP, which would be designed to meet the Permit's Design Storm Standard pursuant to Section X.h.6); and (4) time schedules for implementation of proposed BMPs (if any). Submitting an Action Plan that does not address all of the requirements in this paragraph will be considered a missed deadline after dispute resolution, if any. However, if the dispute resolution process under this Agreement results in any changes to an Action Plan, FBS shall have a reasonable time to prepare and submit any updates to said plan subject to the Action Plan Review procedures set forth in Section 17.2.

17.2 <u>Action Plan Review</u>. Plaintiffs shall have thirty (30) days upon receipt of Defendant's proposed Action Plan to approve or provide comments to FBS on the proposed Action Plan. If Plaintiffs provide FBS comments on the proposed Action Plan, FBS shall have thirty (30) days from receipt of Plaintiffs' comments, unless FBS requests

---

[3] To the extent there is a dispute between the Parties regarding whether another Action Plan is required for an exceedance of a pollutant when there is already an Action Plan being prepared or in the process of being implemented by FBS, that dispute shall be resolved pursuant to the Dispute Resolution Procedures under Section VII of this Agreement.

and Plaintiffs agree to an extension, which agreement shall not be unreasonably withheld, to either incorporate Plaintiffs' material comments into the Action Plan and seek Plaintiffs' approval of the modified Action Plan or another round of comments if mutually agreed, or, if FBS declines to accept one or more of Plaintiffs' material comments, provide Plaintiffs with a written explanation of the grounds for such rejection. Any disputes over the Action Plan, including any requested extensions, shall be resolved pursuant to the Dispute Resolution Procedures of this Agreement, set out in Section VII below. FBS shall not be required to begin implementation of any Action Plan until Plaintiffs have approved the Action Plan, until the dispute over the Action Plan has been resolved through the Dispute Resolution Procedures, or until mutual agreement of the Parties, whichever is later ("Implementation Triggering Event").

17.3    Disputes regarding the adequacy of a particular aspect of the Action Plan shall not impact the schedule for implementing any other unrelated aspect of the Action Plan. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the Dispute Resolution provisions of this Agreement, set out in Section VII below, which shall not be subject to stipulated penalties.

18.    FBS shall contact Plaintiffs to request an extension of any deadline set forth in this Agreement, if necessary, at least seven (7) days prior to the deadline at issue. Failure to request an extension, if necessary, in this timeframe will be considered a missed deadline. Plaintiffs' consent to Defendant's requested extension shall not be unreasonably withheld.

19.    FBS shall revise its Storm Water Pollution Prevention Plans ("SWPPPs") and/or Monitoring & Implementation Plan ("MIP"), if applicable, within thirty (30) days of resolution of any disputes under the Action Plan, whichever comes first. FBS shall notify Plaintiffs in writing when the final Action Plan has been completely implemented, and the SWPPP and/or MIP have been revised.

**D.    <u>Visual Observations.</u>**

20.    Until the Termination Date of the Agreement, FBS shall conduct, and

document visual observations required by the Permit and as more fully described in the Facility SWPPP.

**E.    Employee Training.**

21.    Within thirty (30) days of the Effective Date, FBS shall conduct employee training in order to familiarize employees at the Facility with the requirements of the Permit and this Agreement. The training program shall include, in particular, the requirements that are contained in this Agreement.

**F.    Storm Water Pollution Prevention Plan and Monitoring and Reporting Plan.**

22.    To the extent not already completed, within thirty (30) days of the Effective Date of this Agreement, FBS shall revise the Facility's SWPPP and/or MIP as applicable to include: (i) BMPs that are currently utilized at the Facility; (ii) BMPs identified, developed, and implemented pursuant to this Agreement and/or the Permit; (iii) the specific individual(s) or position(s) responsible for compliance with the Permit; (iv) a detailed site map that includes at a minimum all information required by the Permit; (v) a description of each industrial activity, potential pollutant sources, and each potential pollutant associated with each industrial activity and/or pollutant source; and (v) all other applicable requirements of the Permit and this Agreement.

23.    Plaintiffs shall provide reasonable and material comments, if any, to FBS within thirty (30) days of receipt of any revised SWPPP and MIP.  Within forty-five (45) days of receiving comments from Plaintiffs, FBS shall incorporate Plaintiffs' reasonable and material comments into any revised SWPPP and/or MIP or shall justify in writing to Plaintiffs why any comment is not incorporated. Any disputes as to the adequacy of the SWPPP and/or MIP shall be resolved pursuant to the Dispute Resolution Procedures of this Agreement set forth in Section VII below.

24.    Additional and Ongoing Revisions to SWPPP and/or MIP. FBS shall revise the SWPPP and/or MIP if there are any changes in the Facility's operations that may affect the quality of storm water discharges at the Facility, including but not limited to changes to storm water discharge point(s)/sample location(s) or changes or additions to the BMPs

at the Facility resulting from an Action Plan. Plaintiffs may review and comment on the revised SWPPP and/or MIP if a significant revision has been made, e.g., change or reduction of Discharge Locations, implementation of advanced BMPs, removal of a constituent to be sampled, etc.

## G.    Alternative Means of Compliance

25.    FBS may also satisfy its obligations under the Permit through the filing and acceptance by the San Diego Regional Water Quality Control Board of a No Exposure Certification or Notice of Termination, or through implementing BMPs that meet or exceed design criteria based on the 85th percentile storm event (as defined in paragraph 28 below).No Exposure Certification. The Settling Parties agree that the Facility, or any designated portions of the Facility identified by a unique Waste Discharger Identification Number ("WDID"), that satisfy the requirements of and receive approval from the San Diego Regional Water Quality Control Board for a "No Exposure Certification" as that term is defined in the Storm Water Permit shall be considered to be in full compliance with the terms and obligations of this Consent Decree and the provisions of Section III of this Consent Decree shall not apply so long as the No Exposure Certification is valid and remains in effect. Notice of Termination. The Settling Parties agree that the Facility, or any designated portions of the Facility identified by a unique WDID, that satisfy the requirements of and receive an approval for a "Notice of Termination" from the San Diego Regional Water Quality Control Board as that term is defined in the Storm Water Permit shall be considered to be in full compliance with the terms of this Consent Decree and the provisions of Section III of this Consent Decree shall not apply so long as the Notice of Termination remains in effect.

26.    Compliance through Discharge Reduction. The Settling Parties agree that the Facility, or any designated portions of the Facility identified by a unique WDID, that are designed such that the Facility or portions thereof identified by the WDID are designed to, and do in fact, capture, retain, infiltrate, and/or reuse on site or transfer to an approved water recycling facility the volume of runoff generated from two consecutive

85th Percentile Storm Event as that term is defined by the Storm Water Permit shall be considered to be in full compliance with the terms of this Consent Decree and the provisions of Section III of this Consent Decree shall not apply, provided, however, that the design shall be reviewed and certified by a licensed professional engineer and receive all requisite approvals, if any, from the RWQCB and such capture, retention, or transfer in fact is achieved.

## IV.    COMPLIANCE MONITORING AND REPORTING

27.    Each Reporting Year for the life of this Agreement, Plaintiffs and their representatives may conduct one (1) noticed site inspection per Reporting Year. The site inspections shall occur during normal business hours, and Plaintiffs shall provide FBS with at least five (5) business days' notice of an intended inspection. If an inspection is noticed, Plaintiffs will continue to follow the weather forecast, and will confirm the Wet Season inspection at least twenty-four (24) hours prior to the start of the inspection in an effort to ensure Plaintiffs conduct their inspection during a QSE. Plaintiffs will make efforts to conduct their inspection during a QSE, but a lack of a QSE will not prevent Plaintiffs from conducting the inspection. During inspections, Plaintiffs' representatives will wear safety goggles, hard hats, vests, and any other appropriate safety clothing and footwear recommended by FBS and remain in the presence of 's representatives at all times. Plaintiffs' inspection team shall consist of no more than four (4) persons. Plaintiffs and their representatives shall execute the Site Access and Liability Waiver attached hereto as **Exhibit D** prior to entering the Facility.

28.    Plaintiffs shall be allowed to take photographs and/or record video(s) of the Facility during the inspection, however, Plaintiffs may not take video or pictures of any materials or equipment at the Facility identified by FBS as consisting of, indicating, or including confidential proprietary business materials or processes, or any trade secrets, as that term is defined under the Uniform Trade Secret Act, 18 U.S.C. § 1839. If any such photos videos are inadvertently taken, Plaintiffs' will delete such materials as soon as reasonably practicable and not publish, publicize, or in any way release to members of the

public any such materials.

29.    During the site inspection, Plaintiffs and/or their representatives shall be allowed access to the Facility's SWPPP, MIP, and other non-privileged monitoring records, reports, and all sampling data produced in accordance with paragraph 15 and its subparts. In addition, during the site inspection, Plaintiffs and/or their representatives may collect split samples of discharges from QSEs, even if outside of the first four hours of discharge, from the Facility, though any such samples should be appropriately identified, and the time of the sampling shall be disclosed to FBS. Any samples collected by Plaintiffs shall be submitted to a certified California laboratory for analysis. Any onsite measurements such as pH shall be taken by a properly trained operator with properly calibrated instruments. FBS shall have an opportunity to take concurrent measurements using their own equipment. Copies of the complete laboratory reports shall be provided to FBS within five (5) business days of receipt. Plaintiffs shall bear all costs of inspection, sampling, and analysis.

30.    <u>Reporting and Documents</u>. Until the Termination Date of this Agreement, FBS shall copy Plaintiffs on all final documents related to storm water discharges or water quality at the Facility that are submitted to the Regional Board and/or State Board, and/or any State or local agency or municipality. Such reports and documents shall be provided to Plaintiffs concurrently as they are sent to the agencies and/or municipalities, unless such materials contain confidential proprietary business or trade secret material, in which case such information may be removed or redacted prior to non-concurrent submittal to Plaintiffs, which shall be provided to Plaintiffs within five (5) business days of submittal to the aforementioned agencies. Any correspondence related to Defendant's compliance with the Permit or storm water quality received by FBS from any regulatory agency, State or local agency, county or municipality shall be provided to Plaintiffs within ten (10) business days of receipt by FBS.

31.    <u>Compliance Monitoring and Oversight</u>. FBS shall pay a total of seven thousand five hundred dollars ($7,500.00) to compensate Plaintiffs for costs and fees to be

incurred for monitoring the Facility's compliance with this Agreement, including, but not limited to, anticipated costs and fees related to Annual Site Inspections, Payments shall be made via U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024. The initial payment of two thousand five hundred dollars ($2,500.00) shall be made within thirty (30) days of the effective date. The balance of the amount due shall be paid in accordance with the Payment Schedule attached hereto as **Exhibit E**.

32. <u>Action Plan Payment</u>. FBS shall pay a total of five thousand dollars ($5,000.00) per Action Plan, deemed to be full payment for all of Plaintiffs' costs to review and comment on any Action Plan submitted. Payment shall be made within thirty (30) days of the submittal of an Action Plan and payable to Coastal Environmental Rights Foundation via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024.

## V.    <u>Environmental Project, Reimbursement of Fees and Costs, and Stipulated Payments</u>

33. <u>Environmental Project</u>. To remediate the alleged environmental harms resulting from non-compliance with the Permit alleged in the Complaint, FBS agrees to make a combined total payment of Ten Thousand dollars ($10,000) to Preserve Calavera to fund environmental project activities that will enhance water quality in the Lagoon and its tributaries. Payment shall be made payable to: Preserve Calavera via certified U.S. Mail to Diane Nygaard, 5020 Nighthawk Way, Oceanside, CA 92056. The initial payment of five thousand dollars ($5,000.00) shall be made within thirty (30) days of the effective date. The balance of the amount due shall be paid in accordance with the Payment Schedule attached hereto as Exhibit E.

34. <u>Reimbursement of Coast Law Group's Fees and Costs</u>. FBS shall pay a total of Thirty-Seven Thousand Five Hundred dollars ($37,500.00) to Coast Law Group, LLP, and San Diego Coastkeeper to reimburse investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and

preparing the lawsuit and negotiating this Agreement. The first payment of twenty five thousand dollars ($25,000) shall be made within thirty (30) days of the Effective Date and payable to: Coast Law Group, LLP, Attn: Livia Borak Beaudin via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024. The balance of the amount due shall be paid in accordance with the Payment Schedule attached hereto as Exhibit E.

35.     <u>Stipulated Payments</u>. FBS shall make a remediation payment of One Thousand Five Hundred dollars ($1,500.00) as the sole remedy for each missed deadline included in this Agreement, not excused by Force Majeure or agreement by Plaintiffs. Payments for a missed deadline shall be used to fund environmental project activities that will benefit the Southern California Bight and its tributaries. FBS shall have thirty (30) days from notification to cure any missed deadline (i.e., submit the outstanding deliverable) or, in the alternative, invoke the Dispute Resolution Procedures set forth in Section VII below. Unless Dispute Resolution Procedures have been invoked, FBS agrees to make the stipulated payment within thirty (30) days of notification of a missed deadline to Preserve Calavera via certified U.S. Mail to Diane Nygaard, 5020 Nighthawk Way, Oceanside, CA 92056. FBS shall provide Plaintiffs with a copy of each such payment at the time it is made.

## VI.    <u>DISPUTE RESOLUTION</u>

36.     This Court shall retain jurisdiction over this matter until the Termination Date for the purposes of implementing and enforcing the terms and conditions of this Agreement and adjudicating all disputes among the Parties that may arise under the provisions of this Agreement.  The Court shall have the power to enforce this Agreement with all available legal and equitable remedies, including contempt.

37.     <u>Meet and Confer</u>. A Party to this Agreement shall invoke the dispute resolution procedures ("Dispute Resolution Procedures") of this Section by notifying all other Parties in writing of the matter(s) in dispute.  The Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) business days from the date of receipt of the notice.

The Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

38.    <u>Formal Dispute Resolution</u>. If the Parties cannot resolve a dispute by the end of meet and confer informal negotiations, the Party initiating the Dispute Resolution Procedures may invoke formal dispute resolution ("Formal Dispute Resolution") by filing a motion before the United States District Court for the Southern District of California. The Parties agree to request an expedited hearing schedule on the motion if requested by any Party.

39.    <u>Burden of Proof</u>. The burden of proof for Formal Dispute Resolution shall be in accordance with applicable law. In the event of any disagreement or dispute between Plaintiffs and FBS over the necessity or appropriateness of implementing any particular BMP or set of BMPs, FBS shall bear the burden of demonstrating that their BMPs, collectively, constitute BAT/BCT for the Facility, or that they are in compliance with the terms of this Agreement.

40.    <u>Costs and Fees.</u> The Parties shall be entitled to seek fees and costs incurred in filing or opposing any motion made to the Court for the purpose of Formal Dispute Resolution in Section VII, according to the costs and fees provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

41.    <u>Force Majeure</u>. No Settling Party shall be considered to be in default in the performance of any of its obligations under this Agreement when performance becomes impossible due to circumstances beyond the Settling Party's control, including Force Majeure, which includes any act of god, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; inability to proceed due to pending litigation under the California Environmental Quality Act; action or non-action by, or inability obtain the necessary authorizations, approvals, or permits from, any governmental agency; or inability to obtain equipment or materials from the marketplace if such materials or

equipment are not reasonably available. Impossibility and/or Force Majeure shall not include normal inclement weather, or economic hardship.  Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due diligence has been unable to overcome the failure or performance.  Delay in compliance with a specific obligation under this Agreement due to impossibility and/or Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Agreement.

42.     If FBS seeks to rely upon paragraph 38 to excuse or postpone performance, it shall notify Plaintiffs in writing as soon as possible, but in no event more than ten (10) business days of the date that FBS learned of the event or circumstance that caused or would cause a violation of this Agreement (hereinafter referred to as the "Notice of Nonperformance").

43.     Within ten (10) days of sending the Notice of Nonperformance, FBS shall send Plaintiffs a detailed description of the reason for the nonperformance and the specific obligations under the Agreement that are or have been affected by the Force Majeure.  FBS shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by FBS to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. FBS shall adopt all reasonable measures to avoid and minimize such delays.

44.     If the Parties disagree on a Notice of Nonperformance, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, or on an extension of time to informally resolve their disagreement, either Party shall have the right to invoke the Dispute Resolution Procedures. If the disagreement cannot be resolved informally and Formal Dispute Resolution is invoked, FBS shall bear the burden during Formal Dispute Resolution of proving that any delay in performance of any requirement of this Agreement was caused or will be caused by impossibility and/or Force Majeure and the extent of any delay attributable to such circumstances.

## VII.    <u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>

45.    <u>Plaintiffs' Release</u>. Upon the Effective Date of this Agreement, CERF and Coastkeeper, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives releases all persons including, without limitation, FBS (and each of its direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waive all claims alleged in the Notice Letter and/or Complaint up to the termination of this Agreement.

46.    <u>Defendant FBS's Release</u>. Upon the Effective Date of this Agreement, FBS, on its own behalf and on behalf of its current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives releases Plaintiffs (and their current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from and waive all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to Plaintiffs' Notice Letter and Complaint up to the termination of this Agreement by the Court.

47.    Nothing in this Agreement limits or otherwise affects any Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to Defendant's compliance with the Permit or the Clean Water Act occurring or arising after the Effective Date of this Agreement.

## VIII. <u>MISCELLANEOUS PROVISIONS</u>

48.    <u>No Admission of Liability</u>. Neither this Agreement, the implementation of

additional BMPs, nor any payment pursuant to the Agreement shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. FBS maintains and reserves all defenses they may have to any alleged violations that may be raised in the future.

49.    Construction. The language in all parts of this Agreement shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein.

50.    Choice of Law. The laws of the United States and of the State of California for state law questions shall govern this Agreement.

51.    Severability. In the event that any provision, paragraph, section, or sentence of this Agreement is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

52.    Correspondence. Unless specifically provided for in this Consent Decree, all notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail as follows:

**If to Plaintiff Coastkeeper:**

San Diego Coastkeeper
Attn: Matt O'Malley
3900 Cleveland Ave Suite 102
San Diego, CA 92103
Email: matt@sdcoastkeeper.org

**If to Plaintiff CERF:**

Coastal Environmental Rights Foundation
Attn: Sara Kent
1140 South Coast Highway 101
Encinitas, CA 92024
Email: Sara@cerf.org

**With Copy to:**

Coast Law Group LLP
Attn: Livia Beaudin
1140 South Coast Hwy 101
Encinitas, CA 92024
Email: livia@coastlawgroup.com

**For Free Builders Supply, Inc.**

Free Builders Supply, Inc.
Attn: Brian Aberg
1530 Linda Vista Drive
San Marcos, CA 92078
Email: freebuilders1530@gmail.com

**With Copy to:**

S. Wayne Rosenbaum
The Environmental Law Group, LLP
Varco & Rosenbaum
225 Broadway, Suite 1900
San Diego, CA 92101
Email: swr@Envirolawyer.com

53.     Notifications of communications shall be deemed submitted three (3) business days after having been sent via U.S. mail or the day of sending notification or communication by electronic mail. Any change of address or addresses shall be communicated in the manner described above for giving notices.

54.     Effect of Consent Decree. Except as provided herein, Plaintiffs do not, by their consent to this Consent Decree, warrant or aver in any manner that Defendant's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation.  Nothing in this Consent Decree shall be construed to affect, limit, or increase in any way the obligation of FBS to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

55.     Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy, email

of a .pdf signature, or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

56.    <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

57.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

58.    <u>Integration Clause</u>. This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

59.    <u>Authority of Counsel</u>. The undersigned representatives for Plaintiffs and FBS each certify that he/she is fully authorized by the Party whom he/she represents to enter into the terms and conditions of this Consent Decree.

60.    <u>Authority of Parties</u>. Each Party certifies that its undersigned representative(s) is fully authorized to enter into this Consent Decree, to execute it on behalf of that Party, and to legally bind that Party to the terms of this Consent Decree.

61.    The Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated:    10/21/2021 _____    By: _____

Name: _____Cindy J Lin_____

Title: _____Board President_____

San Diego Coastkeeper

Dated: ___October 18, 2021___          By: _____
                                        Name: Sara Ochoa
                                        Title: Programs Director
                                        Coastal Environmental Rights Foundation

Dated: _____          By: _____
                                        R. Joseph Free
                                        Owner
                                        Free Builders Supply, Inc.

APPROVED AS TO FORM

Dated: ___October 18, 2021___          By: _____
                                        Livia Borak Beaudin
                                        Coast Law Group LLP
                                        Attorneys for CERF

Dated: ___October 19, 2021___          By: _____
                                        Matt O'Malley
                                        Attorney for San Diego Coastkeeper

Dated: ___October 19, 2021___          By: _____
                                        S. Wayne Rosenbaum
                                        The Environmental Law Group, LLP
                                        Attorney for Free Builders Supply, Inc.

**IT IS SO ORDERED.**

Date: _____            _____
                                        Hon. Cathy Ann Bencivengo
                                        United States District Judge
                                        Southern District of California

Consent Decree                                    Civil Case No. 3:21-cv-01350-CAB-MDD

Dated: _____        By:_____
                              Name:_____
                              Title:_____
                              Coastal Environmental Rights Foundation

Dated: 10-19-2021            By: _____
                              R. Joseph Free
                              Owner
                              Free Builders Supply, Inc.

APPROVED AS TO FORM

Dated: _____        By: _____
                              Livia Borak Beaudin
                              Coast Law Group LLP
                              Attorneys for CERF

Dated: _____        By: _____ Matt
                              O'Malley
                              Attorney for San Diego Coastkeeper

Dated: _____        By: _____
                              S. Wayne Rosenbaum
                              The Environmental Law Group, LLP
                              Attorney for Free Builders Supply

**IT IS SO ORDERED.**

Date: __December 14, 2021__

                              _____
                              Hon. Cathy Ann Bencivengo
                              United States District Judge
                              Southern District of California

Consent Decree                          Civil Case No. 3:21-cv-01350-CAB-MDD

**EXHIBIT A**
**FREE BUILDERS SUPPLY, INC. SITE PLAN**





■ 0.2 mi south on S Pacific St

╅ Lake San Marcos: 0.8 mi south



# SITE PLAN

Scale: 1" = 79'    3.72 acres

Orig.8/24/2021  Updated -/-/-

**BRASH INDUSTRIES**

WDID# 9 37i026525
Free Builders Supply, Inc.
1530 Linda Vista Drive
San Marcos, CA 92078
760-807-6190
**A-1**

| 100 % | Impervious | ▨ | Crushed Rock |

★ Hazardous Material    ● Sample Point (DP#)
○ Air Compressor        ✛ Nearest Water Body
ⅲⅲ Storage Racks          ■ Storm Drain
⊠ Trash Dumpster        ⊕ Yard Drain Inlet

**EXHIBIT B**

**FREE BUILDER SUPPLY, INC. BMP IMPLEMENTATION SCHEDULE**

1.     Free Builders Supply ("FBS") will implement the Storm Water Bast Management Practices ("BMPs") within the specified times set forth in the schedule below at the Facility.

    **(a)**    **Within ninety (90) calendar days of the Effective Date the Consent Decree, FBS will:**

        **(i)**    Install a five thousand (5,000) gallon poly tank ("Poly Tank");

        **(ii)**    Relocate retail rebar away from Drainage Area 1; and

        **(iii)**    Install adequate BMPs to prevent storm water discharges containing pollutants identified in Table 1 of the Consent Decree from the finished goods storage area.

    **(b)**    **Within four (4) months of the Effective Date, FBS will:**

        **(i)**    Construct a berm around the production area.

    **(c)**    **Within six (6) months of the Effective date; FBS will:**

        **(i)**    Construct a sump pit;

        **(ii)**    Install a sump pump;

        **(iii)**    Connect the sump pump to the sump pit; and

        **(iv)**    Relocate the cut-saw to the production area.

    **(d)**    **Within nine (9) months of the Effective Date, FBS will:**

        **(i)**    Complete removal of equipment and other materials from the "boneyard" storage area.

2.     Pursuant to the Consent Decree, failure to meet the above deadlines may result in a stipulated penalty.

**EXHIBIT C**

## FREE BUILDERS SUPPLY, INC. LEASEHOLD MAP

| F | G | H | I | J |
|---|---|---|---|---|
| E | | | | |
| | D | C | B | A | FREE BUILDERS |

**NOT PICTURED: Miller Tire**

| Space | Company | SIC | Y/N IGP? | Contact | Address | City | Zip | Phone |
|-------|---------|-----|----------|---------|---------|------|-----|-------|
| A | Hamnquist Enterprises | 8741 | NO | Mike Hamnquist | 1008 Phillips Street | Vista | 92083 | 760.271.7945 |
| B | GC Lath and Plaster | 1742 | NO | Gary Castro | 1281 Sagewood Drive | Oceanside | 92056 | 760.497.9555 |
| C | San Diego Tile & Stone | 1743 | NO | Jordan Hutton | 1317 Cambridge Court | San Marcos | 92078 | 760.815.7224 |
| D | Marcos Garcia Plastering | 1742 | NO | Marcos Garcia | 1575 Cold Ridge Circle | San Jacinto | 92583 | 760.877.4525 |
| E | AGR Lath & Plastering | 1742 | NO | Jerry Rodriguez | 1885 York Drive | Vista | 92084 | 760.644.0920 |
| F | Dedicated Flooring | 1753 | NO | Tom Klosterman | 2317 Auto Park Way | Escondido | 92029 | 760.535.1982 |
| G | Dave Springsteen Plastering | 1742 | NO | Dave Springsteen | 4192 Mt. Alifan Place, Unit E | San Diego | 92111 | 760.214.0029 |
| H | Martz Masonry | 1741 | NO | Steve Martz | 594 Caminito a Casa, Suite 2 | San Marcos | 92078 | 760.744.5255 |
| I | Oceanside Plastering | 1742 | NO | Javier Mendoza | 1737 Cameo Drive | Vista | 92083 | 760.717.0917 |
| J | Howard McDonald, Lath, Stucco & Plaster | 1742 | NO | Howard McDonald | 1255 Imperial Avenue, Suite 120 - Box 302 | San Diego | 92101 | 760.807.2433 |
| ? | Miller Tire | 5531 | NO | David Dijkman | 2588 El Camino Real, Suite F350 | Carlsbad | 92008 | ? |

**EXHIBIT D**

## <u>FREE BUILDERS SUPPLY, INC.</u>

### <u>FACILITY ACCESS AGREEMENT AND VISITOR LIABIILITY WAIVER</u>

**THIS IS A RELEASE OF LEGAL RIGHTS. READ CAREFULLY BEFORE SIGNING.**

In consideration of being granted the right to visit the Free Builders Supply, Inc. ("FBS") facility located at 1530 Linda Vista Drive, San Marcos, California ("Facility") owned and operated by FBS, **Visitor acknowledges, agrees, and warrants the following:** [1]

1.  FBS operates a construction supply and rebar cutting operation ("Operations") at the Facility.

2.  Notwithstanding the best efforts of FBS, Operations at the Facility pose certain inherent safety risks.

3.  I am not an employee, contractor, or agent of FBS.

4.  It is my sole responsibility to carefully evaluate the risks inherent in visiting the Facility, and I have fully considered those risks, including, without limitation, dangers posed by willful or negligent conduct of myself and/or by others.

5.  I acknowledge and voluntarily assume full responsibility for, and full risk of, property damage or loss, or bodily, mental, or personal injury, including death, relating to my visit to the Facility.

6.  I agree that I shall use due care upon entry to the Facility, not undertake any act that may result in injury, not interfere with any activities at the Facilities, or touch or handle any materials found at the Facility  without prior written authorization.

7.  I agree that the following precautions must be observed at all times during the visit to the Facility:

    a.  All warning signs and barricades must be obeyed;
    b.  Do not enter areas with inadequate lighting;
    c.  Be aware of and stay clear of any overhead hazards; and
    d.  Smoking is prohibited.

8.  I acknowledge that compliance with the terms of this Visitor Release Form and Waiver of Liability and any resulting obligations as a Visitor hereunder is mandatory, and that such

---

[1] FBS Operations do not include activities conducted by tenants on various leaseholds located at the Facility. More information about current lessees at the Facility is provided in Exhibits C and D of this Consent Decree.

**EXHIBIT D**

terms and obligations have been explained to me, and all of my questions related thereto have been answered to my complete satisfaction.

9.  To the fullest extent permitted by law, I hereby release, waive, and discharge, on behalf of myself, my heirs, assigns, guardians, and legal representatives, any and all claims, damages, or losses I may have against FBS, its individual officers, administrators, employees and agents, acting officially or otherwise, arising from any and all injuries that I may incur during my visit to the Facility, including, but not limited to, liability for property damage or loss, or bodily, possible exposure to chemicals known to the State of California to cause cancer or reproductive harm, personal or mental injury, including death, and further covenant that I will not sue FBS for any and all injuries or claims I may suffer during my visit to the Facility.

10. I agree that if any portion of this document is held invalid, the remaining provisions shall be binding and continue in full force and effect.

**I have read the Visitor Release Form and Waiver of Liability carefully, understand its significance, and voluntarily agree to all of its terms.**

Visitor (print name):_____

Signature:_____

Date:_____

**NOTE**: This Agreement and Waiver must be fully executed before a Visitor may visit the Facility.

# EXHIBIT E

## FREE BUILDERS SUPPLY, INC. CONSENT DECREE PAYMENT SCHEDULE

**Within thirty (30) days of the Effective Date of this Consent Decree, Free Builders Supply, Inc.("FBS") shall:**

- Make a payment of five thousand dollars ($5,000) to Preserve Calavera;

- Make a payment of two thousand five hundred dollars ($2,500) to Coastal Environmental Rights Foundation ("CERF"); and

- Make a payment of twenty five thousand dollars ($25,000) to Coast Law Group, LLP.

**Within two (2) months of the Effective Date, FBS shall:**

- Make installment payment (1 of 6) of two thousand one hundred dollars ($2,100) to Coast Law Group, LLP.

**Within three (3) months of the Effective Date, FBS shall:**

- Make installment payment (2 of 6) of two thousand and eighty dollars ($2,080) to Coast Law Group, LLP.

**Within four (4) months of the Effective Date, FBS shall:**

- Make installment payment (3 of 6) of two thousand and eighty dollars ($2,080) to Coast Law Group, LLP.

**Within five (5) months of the Effective Date, FBS shall:**

- Make installment payment (4 of 6) of two thousand and eighty dollars ($2,080) to Coast Law Group, LLP.

**Within six (6) months of the Effective Date, FBS shall:**

- Make installment payment (5 of 6) of two thousand and eighty dollars ($2,080) to Coast Law Group, LLP.

**Within seven (7) months of the Effective Date, FBS shall:**

- Make installment payment (6 of 6) of two thousand and eighty dollars ($2,080) to Coast Law Group, LLP.

**Within fifteen (15) days of the one (1) year anniversary of the Effective Date, FBS shall:**

- Make a payment of five thousand dollars ($5,000) to Preserve Calavera; and

- Make a payment of two thousand five hundred dollars ($2,500) to CERF.

**Within fifteen (15) days of the two (2) year anniversary of the Effective Date, FBS shall:**

- Make a payment of two thousand five hundred dollars ($2,500) to CERF.

E-2